UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                  No. 23-34

ALPHONSE BAZILE
RAYSHAUD GREEN                                          SECTION I

<u>ORDER AND REASONS</u>

Defendants Alphonse Bazile ("Bazile") and Rayshaud Green ("Green") (collectively, "defendants") each filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1] The memoranda supporting their motions are identical.[2] However, Bazile also filed an amended motion[3] to vacate pursuant to 28 U.S.C. § 2255 that raises entirely different grounds for vacatur from his original motion.

The government filed a response in opposition to both Green's and Bazile's motions.[4] For the reasons that follow, the Court **DENIES** defendants' motions to vacate.

### I. BACKGROUND

Defendants were charged in the present matter following a shootout that occurred outside of Bazile's home which resulted in the death of one victim.[5] The

---

[1] R. Doc. Nos. 254, 255.

[2] *Compare* R. Doc. No. 254-1, *with* R. Doc. No. 255-1.

[3] R. Doc. No. 262.

[4] R. Doc. Nos. 265, 266.

[5] *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 1.

Court adopts the Fifth Circuit's description of the events surrounding the shootout

and the victim's death, as articulated in its opinion affirming this Court's judgment

on Green's direct appeal:[6]

> In August 2022, Rayshaud Green was involved in a shootout at the home of his stepfather and codefendant, Alphonse Bazile. On the day of the shooting, Bazile's grandson began fighting another juvenile who had come to the home with some companions. Green and Bazile witnessed the fight and told the adolescents to leave. About thirty minutes later, some of them returned in a white car, and two approached Green and Bazile. These teenagers brandished firearms and one juvenile later told police that the group had returned to continue the fight. Bazile again told them to leave, and he and Green walked into Bazile's house and closed the door. The two teens began to walk away, and the white car in which they had arrived left.

> After reentering the home, Bazile and Green armed themselves. Green grabbed a 9-millimeter handgun with no serial number and a Glock auto-sear that allowed the weapon to fire automatically. Bazile and Green met in the backyard, and the two then reentered the home. About forty seconds after they had initially reentered the home, Bazile walked through the front door and brandished his weapon while standing on the front lawn. Green quickly followed, standing in the doorway with his own firearm drawn. By this time, the two teenagers had retreated about a hundred yards from the home. When Bazile exited the house with his gun, one of the two teens began running away, and Green and Bazile began firing at the second. That juvenile was shot five times and died at the scene. Based on later ballistic testing, Bazile fired the shots that killed the victim.

> After the initial volley of gunfire, Green and Bazile reentered the home. The victim's companions returned in their car and, upon discovering his body, began shooting at Bazile's house. The district court determined that this shooting began only after Bazile and Green had discharged their weapons, struck the victim, and reentered the home. The entire exchange of gunfire lasted about one minute. Green then left the scene through the backyard. He was apprehended roughly three weeks later. Searching his home, police discovered the weapon Green had used in the shooting.

---

[6] *See id.* at 2–3.

Bazile pleaded guilty to count 1 of the superseding indictment, which charged him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2.[7] Several months later, Green pleaded guilty to counts 2 and 3 of the superseding indictment, which charged him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2; and possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).[8] This Court accepted their pleas of guilty, finding that the evidence in defendants' respective factual bases[9] supported their guilty pleas.[10]

Defendants' sentencings were set on the same day.[11] They each lodged objections to their respective Presentence Investigation Reports ("PSR"). Among other objections, defendants both objected to the PSR's cross-reference to voluntary manslaughter, contending that they "acted in self-defense and therefore did not commit a homicide."[12] The government not only opposed defendants' objection to the cross-reference, it further filed "its own objection, in which it assert[ed] that a cross-reference to murder [wa]s more appropriate."[13] This Court overruled defendants' objections with respect to the cross-reference, and concluded that the "heightened cross-reference to murder, rather than voluntary manslaughter, was justified."[14]

---

[7] R. Doc. No. 188.

[8] R. Doc. No. 189.

[9] R. Doc. No. 113 (Bazile's factual basis); R. Doc. No. 140 (Green's factual basis).

[10] R. Doc. No. 215, at 61 (transcript of Bazile's rearraignment); R. Doc. No. 217, at 41 (transcript of Green's rearraignment).

[11] R. Doc. No. 141, 160.

[12] R. Doc. No. 187, at 4.

[13] *Id.*

[14] *USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 4.

In doing so, the Court found that defendants did not act in self-defense because they were not "under an imminent threat of danger of death or serious bodily injury" by the time they discharged their weapons.[15] The Court also found that defendants had been "able to enter the residence and close the door behind them, and there is no evidence that anyone approached the residence thereafter."[16]

Additionally, in finding that second-degree murder, rather than voluntary manslaughter, was the most analogous homicide offense for purposes of the cross-reference, the Court found that defendants' actions had demonstrated the requisite malice.[17] It found that "at the very least, defendants demonstrated an extreme level of recklessness and wanton disregard for human life when they discharged their firearms at the juveniles."[18] Furthermore, this Court held that defendants' malice was not negated by a finding that the offense was committed in a "heat of passion."[19] Without reaching the question of whether there was actual provocation,[20] the Court found defendants had "sufficient time to cool off," because they had "walked across the front lawn, walked into the house, then to the backyard, convened in the backyard, and then walked back through the house and once again across front lawn" before killing the victim.[21] It therefore concluded that "their malice was not negated by the 'heat of passion'" and that the second-degree murder cross-reference was

---

[15] R. Doc. No. 187, at 9.
[16] *Id.*
[17] *Id.* at 11.
[18] *Id.*
[19] *Id.* at 13.
[20] *See id.* at 13–14 n. 67.
[21] *Id.* at 14.

appropriate.[22] The Court sentenced each of defendants to 180 months imprisonment.[23]

Shortly thereafter, both defendants appealed.[24] The Fifth Circuit affirmed this Court's judgment with respect to both defendants.[25] Regarding Bazile's appeal, the Fifth Circuit "affirmed . . . without further briefing" because Bazile had argued on appeal that he did not receive effective assistance of counsel, but such argument had not yet been "sufficiently developed in the district court" such that the Fifth Circuit could "address it on direct appeal."[26]

As for Green, the Fifth Circuit described his arguments on appeal as "largely challeng[ing] the district court's factual determinations," and urging the Fifth Circuit to instead accept his version of the event.[27] Doing so, Green argued, would demonstrate that this Court's determination that he had not acted in self-defense was clearly erroneous.[28]

One pillar supporting his argument was his theory that the government had "misrepresented a still image taken from video footage captured by Bazile's security camera," by "cropp[ing] out the time stamp on the image to give the false impression that it represented a pre-shooting backyard meeting" between him and Bazile.[29] He

---

[22] *Id.* at 15.

[23] R. Doc. No. 188, at 2; R. Doc. No. 189, at 2.

[24] *See* R. Doc. Nos. 195, 203 (Notices of Appeal by Bazile); R. Doc. No. 199 (Notice of Appeal by Green).

[25] *See* R. Doc. Nos. 248–249.

[26] R. Doc. No. 248-1, at 2.

[27] R. Doc. No. 249-1, at 6.

[28] *See id.*

[29] *Id.*

argued that when "[p]roperly sequenced . . . the video proves that he and Bazile did not meet in the backyard before the shooting but only did so afterward."[30]

The Fifth Circuit rejected this argument. It held:[31]

> The district court determined that Green and Bazile met in the house's backyard after arming themselves but before reemerging and shooting. This is well supported by the record, including by the PSR, the accuracy of which Green does not challenge. *See United States v. Bourrage*, 138 F.4th 327, 353 (5th Cir. 2025) ("[T]he defendant bears the burden of demonstrating the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it."). In addition, the factual basis for Green's guilty plea, which he closely examined before entering his plea, also includes this image and caption. And he received explanations from both his attorney and the district court before acknowledging that the factual basis was all "true and accurate" and "correct." By contrast, the evidence summoned by Green proves, at most, that the two men met in the backyard after the shooting—it does not disprove that they met beforehand as well. Even if Green plausibly disputes the chain of events, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

The Fifth Circuit similarly rejected Green's contention that "the juveniles initiated the shootout and that he did not confront them until he heard gunfire being exchanged outside."[32] It held that, "[o]nce again, Green may propose an arguable version of events, but a competing view of the evidence does not equate to clear error when the district courts determinations are plausible and well supported by the

---

[30] *Id.*

[31] *See id.* at 6–7.

[32] *Id.* at 7.

record."[33] After evaluating the *Santiago* factors, the Fifth Circuit found that this Court did not err in finding that Green failed to satisfy the elements of self-defense.[34]

Green also argued on appeal that this Court's determination that second-degree murder was the appropriate homicide cross-reference was erroneous.[35] The Fifth Circuit rejected these arguments for similar reasons, finding this Court's factual findings were both not clearly erroneous and demonstrated that: Green aided and abetted Bazile, such that he may be held responsible for the shots fired by Bazile that ultimately killed the victim;[36] and defendants had time to "cool off" between the alleged provocation and killing of the victim, meaning there was "sufficient time for any 'heat of passion' to cool."[37] Regarding this latter holding, the Fifth Circuit pointed out that "Green offer[ed] no reason to disturb the district courts factual findings, including that Green and Basil safely reentered the home and then armed themselves before walking back through the house, crossing the front yard and opening fire on the retreating teenagers."[38] Persuaded by these facts and comparable Fifth Circuit precedent,[39] the Fifth Circuit found that this Court's application a cross reference to second-degree murder was proper.[40]

---

[33] *Id.* at 7–8.

[34] *Id.* at 8–10.

[35] *See id.* at 10–14.

[36] *See id.* at 10–12.

[37] *See id.* at 12–14.

[38] *Id.* at 13.

[39] *See Frascarelli v. U.S. Parole Comm'n,* 857 F.3d 701, 705–06 (5th Cir. 2017).

[40] R. Doc. No. 249-1, at 14.

Finally, Green argued that 18 U.S.C. § 922(g)(1) violates the Second Amendment pursuant to *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).[41] He challenged § 922(g)(1) as unconstitutional, both facially and as applied to him, because there was no analogue supporting application of § 922(g)(1) to his predicate carjacking offense.[42] The Fifth Circuit rejected both challenges, noting that it had previously "upheld § 922(g)(1) against facial challenges" and "rejected as-applied challenges to § 922(g)(1) in cases . . . where the defendants predicate felony was theft."[43]

Following resolution of their appeals, defendants now move to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255.[44] Green's motion and Bazile's first motion to vacate raise the same four grounds in support of vacatur, arguing that their counsels were constitutionally ineffective,[45] which they argue resulted in "a sentence that was approximately twelve years longer" than they would have faced.[46]

First, they argue that their trial counsels were ineffective when they "allowed the government to submit a 'still photograph' without the time and date stamp on it

---

[41] *Id.* at 14.

[42] *Id.*

[43] *Id.* Green was convicted for armed robbery in the Parish of Orleans on August 24, 2009. *See* R. Doc. No. 140, at 5.

[44] *See* R. Doc. Nos. 254, 255.

[45] *Compare* R. Doc. No. 254-1, at 2–3; R. Doc. No. 255-2, at 2–3. The Court notes that defendants' form-motions vary slightly from one another with respect to the four grounds. *Compare* R. Doc. No. 254, at 4–9, *with* R. Doc. No. 255, at 4–9. However, considering defendants' memoranda are identical, including the section titled "Statement of the Issues," the Court construes the motions as raising the same four arguments. *See* R. Doc. No. 254-1, at 1–3; R. Doc. No. 255-1, at 1–3.

[46] R. Doc. No. 254, 1, at 24; R. Doc. No. 255-1, at 24.

which was used to create a flaw[ed] version of the true story," which they argue

violates the Fifth, Sixth, Eighth, and Fourteenth Amendments.[47] Second, they argue

that trial counsels "fail[ed] to object to the government's submission of inaccurate

information in [the] Factual Basis, Indictment, and PSR," which they argue violates

the Fifth, Sixth, Eighth, and Fourteenth Amendments.[48] Third, they submit that trial

counsels were ineffective because they "fail[ed] to file a 'motion to suppress evidence'

when the New Orleans Police Department fail[ed] to properly investigate the address

. . . where they allege[d]ly found a weapon."[49] They also argue, with respect to this

third ground, that "no one was question[ed] about . . . who stayed there[.]"[50] Fourth,

defendants argue that appellate counsel[51] was ineffective "when she waived

defendants['] presence for oral arguments before the panel of Judges."[52]

　　Finally, defendants re-urge the argument they previously made before this

Court[53] and to the Fifth Circuit on Green's direct appeal[54] that 18 U.S.C. §922(g)(1)

is unconstitutional on its face and as applied to each defendant.[55] As the Fifth Circuit

---

[47] *See* R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.

[48] *See* R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.

[49] *See* R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.

[50] *See* R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.

[51] The Court recognizes that Bazile and Green had different counsel on appeal, and that the Fifth Circuit only heard oral argument in Green's appeal. *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 85; *see generally USA v. Alphonse Bazile*, No. 24-30606. Although raised in both defendants' § 2255 motions, the argument really only applies to Green.

[52] *See* R. Doc. No. 254-1, at 3; R. Doc. No. 255-2, at 3.

[53] *See* R. Doc. No. 91.

[54] *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 14–15.

[55] *See* R. Doc. No. 254-1, at 3; R. Doc. No. 255-2, at 3.

explained,[56] this argument is foreclosed by Fifth Circuit precedent. *See United States v. Diaz*, 116 F.4th 458, 470 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025) (upholding § 922(g)(1) against both a facial and an as-applied challenge by a defendant whose predicate conviction was vehicle theft); *United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025) (upholding § 922(g)(1) against an as-applied challenge by a defendant whose predicate conviction was aggravated battery); *United States v. Isaac*, No. 24-50112, 2024 WL 4835243, at *1 (5th Cir. Nov. 20, 2024) ("[S]omeone convicted of aggravated assault with a deadly weapon can be constitutionally dispossessed of a firearm."). Accordingly, the Court denies defendants' request to vacate their sentences on this fifth and final ground without further analysis.

Bazile's amended § 2255 motion raises a new ground of ineffective assistance of counsel: he argues that his counsel failed to ensure that he "had a rational understanding of the proceedings"[57] or that he appreciated the seriousness of the "consequences of entering into a plea of guilty."[58] He avers that his counsel recognized that he potentially suffered from "diminished memory," "diminished capacity," and dementia[59] and argues that counsel should have requested a competency hearing.[60] Bazile asserts that he "consented to a guilty plea that was [the] produce [of] counsel coercion."[61]

---

[56] *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 14–15.

[57] R. Doc. No. 262-1, at 1.

[58] *Id.* at 2–3.

[59] *Id.*; R. Doc. No. 262, at 4.

[60] R. Doc. No. 262-1, at 5.

[61] *Id.*

The government filed two responses in opposition to defendants' motions.[62] It argues that defendants cannot meet their burden pursuant to *Strickland* with respect to any of the grounds they raise.[63] The Court will address each ground in turn.

## II.    STANDARDS OF LAW

### a.  28 U.S.C. § 2255

Title 28, United States Code, section 2255 allows a federal inmate to move to vacate, set aside or correct his sentence on the ground that it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief pursuant to § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain

---

[62] R. Doc. Nos. 265, 266.
[63] *See generally* R. Doc. Nos. 265, 266.

error' standard [applied] on direct appeal." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

To establish cause, the defendant must show that "'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.* To satisfy the actual prejudice requirement, the defendant must demonstrate that, "but for the error, he might not have been convicted." *Id.* at 994.

Defendants claim that they are entitled to relief pursuant to 28 U.S.C. § 2255 because the ineffective assistance of their trial counsels and appellate counsel deprived them of their rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Ineffective assistance of counsel claims satisfy the cause and prejudice standards, and they are ordinarily first raised on collateral review due to the difficulty of compiling an adequate record by the time of direct appeal. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992). Furthermore, the Supreme Court has held that defendants may raise ineffective assistance of counsel for the first time on collateral review even if the defendant had possessed an adequate record by the time of direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2004). The *Massaro*

12

court explained that a trial transcript is unlikely to show the existence of conflicts of interest or whether or not trial counsel's actions were supported by reasonable strategy. *Id.* at 505. The Court concluded that the "better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255." *Id.* at 504.

When considering a § 2255 motion, the court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A petitioner is entitled to an evidentiary hearing if he makes specific factual claims that are 'not speculative, conclusory, plainly false, or contradicted by the record.'" *United States v. White*, 840 F. App'x 798, 799 (5th Cir. 2021) (quoting *United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013)).

### b.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must demonstrate both that his attorney's performance was deficient and that this substandard performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). Indeed, it is the "defendant's burden to prove" prejudice, which he meets by demonstrating "a reasonable probability that the

result would have been different." *Coleman v. Vannoy*, 963 F.3d 429, 434 (5th Cir. 2020).

To demonstrate deficiency of counsel for purposes of an ineffective assistance of counsel claim, counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness. . . . under prevailing professional norms." *Id.* at 687–88. In conducting this inquiry, courts must consider reasonableness in light of all of the circumstances. *Id.* at 688. Courts must be highly deferential and seek to "eliminate the distorting effects of hindsight." *Id.* at 689. The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged conduct 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

In order to prove prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, the defendant is required to "show 'that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted

14

on going to trial.'" *Lavigne v. Hooper*, No. 23-30807, 2025 WL 1904564, at *2 (5th Cir. July 10, 2025), cert. denied sub nom. *Lavigne v. Vannoy*, 223 L. Ed. 2d 524 (Jan. 12, 2026) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012)). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Appellate counsel's performance is evaluated under the same *Strickland* standard as is trial counsel's performance. *Id.* With respect to the deficient performance prong in the appellate context, the Fifth Circuit has stated that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available.'" *Id.* "Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* (quoting *Green*, 160 F.3d at 1043). As for the prejudice prong, defendant must first show that he would have been afforded relief on appeal. *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000) ("[T]he prejudice prong first requires a showing that would have afforded relief on appeal.").

### III.    ANALYSIS

Defendants' motions, although raised pursuant to § 2255 and purportedly based on constitutionally ineffective assistance of counsel, do not attempt to establish either *Strickland* prong.[64] Indeed, aside from a section titled "Summary of the

---

[64] *See generally* R. Doc. Nos. 254-1, 255-1.

Argument"[65] and the first few pages of each memorandum, which [acknowledge] the *Strickland* standard and articulate the four grounds upon which defendants claim ineffective assistance of counsel, the identical memoranda supporting their § 2255 motions merely repurpose portions of the appellant brief[66] and reply brief[67] from Green's direct appeal. Bazile also filed an "amended" § 2255, in which he alleges that his attorney was ineffective because she failed to ensure that he was competent and failed to move for a competency evaluation.[68] He makes no mention of the grounds raised in his original § 2255 motion.[69]

Defendants attempt to re-urge the arguments Green made on appeal without making any attempt to recast them in the light of the *Strickland* framework. Bazile's amended § 2255 similarly makes only cursory mention of his *Strickland* burden. It is difficult to see how the memoranda before the Court are sufficient for defendants to carry their burden pursuant to *Strickland. See Wong v. Belmontes*, 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."); *Buck v. United States*, No. 14-354, 2020 WL 7753712, at *1 (N.D. Tex. Nov. 20, 2020), *report and*

---

[65] *See* R. Doc. No. 254-1, at 23; R. Doc. No. 255-2, at 23. In this section, defendants summarily describe their position that counsels were ineffective "when they allowed [the] Government to misrepresent information in the PSR and Factual Basis Reports d[u]ring trial,[*sic*] and sentencing proceedings." *See id.* This summary captures the first and second grounds raised by defendants and adds no new information or argument.

[66] *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 48, at 13–29, 30, 31–47, 53–54.

[67] *See id.*, Doc. No. 57, at 9–23.

[68] *See generally* R. Doc. No. 262.

[69] *See id.*

*recommendation adopted*, No. 18-1245, 2020 WL 7711845 (N.D. Tex. Dec. 29, 2020) ("Although pro se filings are liberally construed, this does not mean the court must develop the arguments on behalf of the litigant."). Nevertheless, the Court will additionally explain why each of defendants' arguments fail to establish they are entitled to vacatur.

### 1. *"Allowed" government to submit the undated "still photograph"*

Reading defendants' motions generously, the first argument is that their trial counsels were deficient for not objecting to the inclusion of the photograph of them "meeting in the backyard, both armed with loaded firearms" in their factual bases. According to defendants, because this photograph did not have time and date stamps, it created a "flaw[ed] version of the true story."[70] Ultimately, defendants seem to argue that this flawed version of events led this Court to reject defendants' self-defense arguments and apply the second-degree murder, rather than the manslaughter, cross-reference at sentencing.[71]

The government first argues that defendants' claim should be procedurally barred, since the arguments were already presented to and rejected by the Fifth Circuit in Green's appeal.[72] The government contends that the arguments have merely been "re-packaged" as ineffective assistance of counsel arguments, and it

---

[70] R. Doc. No. 254-1, at 2; R. Doc. No. 255-1, at 2.
[71] R. Doc. No. 254-1, at 25; R. Doc. No. 255-1, at 25.
[72] *See* R. Doc. No. 265, at 7–8; *see also USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1.

contends that they amount to nothing more than a "not-so-veiled attempt to re-litigate issues raised in [Green's] direct appeal via a § 2255 motion."[73]

The government is correct that, generally, "issues raised and rejected on appeal cannot be relitigated in a § 2255 motion." *United States v. Kelley*, No. 20-294, 2024 WL 3512139, at *4 (W.D. La. July 23, 2024), *appeal dismissed*, No. 25-30330, 2025 WL 3485821 (5th Cir. Aug. 6, 2025). "The Court is not required on Section 2255 motions to reconsider claims of error raised and disposed of on direct appeal." *United States v. Lewis*, No. 9-184, 2014 WL 5810520, at *7 (E.D. La. Nov. 6, 2014) (Lemelle, J.) (citing *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004)). Considering defendants' first argument is literally copied from Green's appellate brief, it seems that this issue has been presented and rejected by the Fifth Circuit.

However, given that the ineffective assistance of counsel argument presents slightly different questions than those presented to the Fifth Circuit, the Court proceeds with *Strickland's* two-prong inquiry. Defendants' argument still fails.

First, both Green and Bazile signed each page of their respective factual basis, which not only include the photograph they now object to,[74] but also state that they "met in the backyard armed with the firearms" prior to discharging these firearms at the front of the house.[75] Their factual bases also each state that approximately 38

---

[73] R. Doc. No. 265 at 7.
[74] *See* R. Doc. No. 113, at 4; R. Doc. No. 140, at 4.
[75] *See* R. Doc. No. 113, at 3–4; R. Doc. No. 140, at 3–4.

seconds lapsed from the time they entered the house, retrieved the firearms, and began shooting.[76]

Green and Bazile both orally confirmed at their respective rearraignment hearings that they had read each page of their respective factual basis, signed each page, and agreed that the information within was true and accurate.[77] The Court gave both defendants an opportunity to lodge any disagreement with the statements in their factual basis and both defendants explicitly agreed that their factual basis was correct in these respects.[78]

Counsel is not unreasonable for relying on the multiple confirmations made by defendants of the veracity of the timeline set forth in their factual bases. *United States v. Melancon*, No. 19-119, 2025 WL 3653705, at *11 (E.D. La. Dec. 17, 2025) (Ashe, J.) (rejecting the defendant's ineffective assistance of counsel argument based on alleged inaccuracies in his factual basis, reasoning that "because [the defendant], at his rearraignment, explicitly agreed to all the language in the factual basis, he cannot now claim that the language in the factual basis is inaccurate").

---

[76] *See* R. Doc. No. 113, at 4; R. Doc. No. 140, at 4.

[77] *See* R. Doc. No. 217, at 34–38; R. Doc. No. 215, at 56–60.

[78] R. Doc. No. 217, at 39–40; R. Doc. No. 215, at 56–60. Although irrelevant to defendants' claim with respect to the still photograph, the Court acknowledges that Bazile lodged an objection to the following sentence in his factual basis: "An ATF expert would testify that the above-mentioned weapons and ammunition, namely the .32 caliber revolver and the Polymer 80, Model P940C, 9mm firearm, with no serial number, possessed by BAZILE on August 22, 2022, were not manufactured in Louisiana." R. Doc. No. 113, at 5. Bazile's concern was that the factual basis "sa[id] [he] had the 9mm," when he only admitted to possessing the .32 caliber revolver. *See* R. Doc. No. 215, at 4–5, 56. This sentence was excised from his factual basis prior to his pleading guilty. *See id.* at 58; *see also* R. Doc. No. 113, at 5.

Moreover, defendants have not demonstrated that the Court would have reached a different result with respect to sentencing had the photograph been replaced with a "corrected" one. According to defendants, the corrected photograph would show that they met in the backyard only "after the shooting incident" and not before.[79]

This Court determined that self-defense was not applicable because the evidence demonstrated that Green and Bazile had "enter[ed] the residence and close[d] the door behind them, and there [was] no evidence that anyone approached the residence thereafter."[80] This Court additionally found that "Bazile and Green also had reasonable alternatives to stay in the residence and call the police."[81] Bazile and Green do not dispute that they reentered the house,[82] only that they did not meet in the backyard "between the time of the aggressors' arrival and the shootout."[83] But this does not negate the Court's finding that there was a "reasonable, legal alternative to violating the law," *Santiago*, 96 F.4th at 849–50. The evidence would still show that Bazile and Green had reentered the house safely and could have stayed in the house and called the police.[84] Moreover, as the Fifth Circuit noted in resolving Green's appeal of this same issue: "the evidence summoned by Green proves, at most, that

---

[79] R. Doc. No. 254-1, at 39; R. Doc. No. 255-2, at 39.

[80] R. Doc. No. 187, at 9.

[81] *Id.*

[82] R. Doc. No. 254-1, at 7–9, 36–37 (discussing when Bazile and Green entered and reemerged from the residence); R. Doc. No. 255-2, at 7–9, 36–37 (same).

[83] R. Doc. No. 254-1, at 38; R. Doc. No. 255-2, at 38.

[84] *See also USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 6 ("If *any* of the[] elements is not satisfied, the defendant's self-defense claim fails."); *id.* at 8–10 (affirming this Court's findings with respect to the *Santiago* factors).

20

the two men met in the backyard after the shooting—it does not disprove that they met beforehand as well."[85] Defendants cannot show that a corrected photograph would have changed the Court's self-defense ruling.

With respect to heat of passion, this Court found that defendants had sufficient time to "cool off" by comparing this case with the Fifth Circuit's holding in *Frascarelli v. United States Parole Comm'n*, 857 F.3d 701 (5th Cir. 2017).[86] In *Frascarelli*, the Fifth Circuit found that a defendant had sufficient time to cool off when, during a fight with his girlfriend, he "descend[ed] the stairs from her room on the second floor, t[ook] a hammer from a toolbox, climb[ed] back up the stairs, and hit her in the face with the hammer." *Id.* at 703. The Fifth Circuit in *Frascarelli* reasoned that "the fact that [the defendant] walked down and up a flight of stairs to obtain the hammer . . . is evidence that the heat of passion had time to 'cool.'" *Id.* at 708. The Fifth Circuit also favorably cited *Frascarelli* on Green's direct appeal, describing it as "instructive" for the instant case.[87] It stated: "If Frascarelli had ample time to 'cool down' when moving between rooms of a home, then the forty seconds that Green used to retreat inside, arm himself, and reemerge was sufficient time for any 'heat of passion' to cool."[88] Notably, defendants' § 2255 motions do not seem to contest the following sentence that is in both of their factual bases: "[t]he time from entering the house,

---

[85] *Id.* at 7.

[86] R. Doc. No. 187, at 14–15.

[87] *USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 92-1, at 13–14.

[88] *Id.* at 14.

21

arming himself with a firearm, and discharging the firearm, was a total of approximately 38 seconds."[89]

Even if the Court were to remove the time defendants met in the backyard, making it undoubtedly a tighter timeline than before, the Court is still persuaded that defendants had sufficient time to cool when they each "walked away from the altercation to retrieve a weapon and return."[90] Again, defendants have not met their burden of demonstrating the result would be different.

Consequently, defendants' first ground of ineffective assistance of counsel fails.

### 2. Failure to object to "inaccurate information" in the Factual Basis, Indictment, and PSR

Aside from the allegedly inaccurate information discussed in the previous section regarding when defendants met in the backyard, defendants do not elaborate what other information in the factual basis, superseding indictment, or PSR is allegedly "inaccurate" or "misrepresent[ed],"[91] to which they argue their counsel should have objected.[92] Aside from the alleged sentencing consequences, which this Court addressed in the previous section, defendants also do not explain what prejudice resulted from this allegedly inaccurate information.

---

[89] *See* R. Doc. No. 113, at 4; R. Doc. No. 140, at 4.

[90] *Cf.* R. Doc. No. 187, at 14.

[91] *See, e.g.*, R. Doc. No. 255-2, at 25 (stating, without further explanation, that "Defendants claim[] the Government's misrepresentation of information and evidence in the PSR, Factual Basis[,] and sentencing procedures were both deficient and that deficiency prejudiced the defense"); R. Doc. No. 254-1, at 25 (same).

[92] R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.

Again, both Green and Bazile signed each page of their respective factual basis, affirmed that the information within was true and accurate, and did not, when given the opportunity to do so, raise any disagreement with their respective factual basis that was not addressed. Counsel was not deficient for relying on defendants' assurances as to the accuracy of the statements therein. *Melancon*, 2025 WL 3653705, at *11.

With respect to counsels' alleged failure to object to information in their PSRs, the record reveals that defendants' counsels did object to information in the PSR;[93] some of such objections were sustained[94] and others were overruled by this Court.[95] *See Munoz v. United States*, No. 7-119, 2011 WL 13308434, at *8 (W.D. Tex. Dec. 1, 2011) (finding "meritless" the defendant's claim that his counsel was deficient because he he allegedly failed to object to the PSR where the record proved that counsel objected). Moreover, to the extent that defendants believe that their counsels should have objected to additional aspects of the PSR, they have not demonstrated that such objections would have been meritorious. *United States v. Cruz*, 799 F. App'x 280, 281 (5th Cir. 2020) ("[C]ounsel does not act deficiently by failing to raise a meritless argument."); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a

---

[93] R. Doc. Nos. 145–146, 163.
[94] The probation officer amended the final PSR in light of one of Green's objections. *See* R. Doc. No. 168, at 26.
[95] R. Doc. No. 187.

successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

As for the indictment, again defendants do not explain what information contained therein is inaccurate or how it was otherwise defective. Absent supporting facts and argument, the Court cannot adequately evaluate defendants' challenge to the indictment. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989) ("*Pro se* habeas corpus petitions must be construed liberally. . . . [H]owever, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."). Additionally, the record shows that defendants' counsels filed motions to dismiss certain counts of the indictment with respect to each defendant.[96] The Court denied these motions.[97] The record does not suggest that counsel was deficient in its review of the sufficiency of the indictment, and the Court perceives no defects in the indictment. *Cf. Williams*, 2024 WL 1550592, at *2 (holding that "counsel was not deficient for failing to object to the sufficiency of the indictment" where "the indictment was not defective").

### 3. Failure to file a motion to suppress with respect to the seized firearm

The entirety of the discussion of the third ground of ineffective assistance of counsel is in defendants' motions as follows:

> Did trial counsel render ineffective assistance of counsel when they fail[ed] to file a "motion to suppress evidence" when New Orleans Police Department fail[ed] to properly investigate the address of 9696 Hayne

---

[96] *See* R. Doc. Nos. 70, 71, 76.
[97] *See* R. Doc. No. 91.

> Blvd[.] Apt[.] #J? W[h]ere they allegedly found a weapon upon duing[*sic*] a search warrant. No one was question[ed] about who stayed there?[98]

The remainder of defendants' motions do not elaborate on this question or present supporting facts and argument.[99] The firearm recovered at 9696 Hayne Blvd. was a "Polymer 80, Model P940C, 9mm firearm, with no serial number."[100] According to Green's factual basis, "[a] ballistics test was conducted on the firearm and police learned the firearm found in [Green's] residence was the same firearm he possessed on August 22, 2022," that is, the day of the shootout.[101]

The government highlights in its response that Green does not "explain what the basis for a motion to suppress in this case would have been or why such a motion would have succeeded."[102] It argues that, consequently, Green cannot show that his counsel's decision not to file a motion to suppress was deficient, rather than the result of sound trial strategy.[103] The government theorizes that Green's counsel perhaps did not file a motion to suppress because counsel did not want to draw attention to the fact that the recovered gun was a "ghost gun," a "machine gun . . . with no serial number."[104]

Further, the government submits that Green cannot show the requisite *Strickland* prejudice. The government first notes that the recovery of the firearm from

---

[98] R. Doc. No. 254-1, at 2; R. Doc. No. 255-2, at 2.
[99] *See generally* R. Doc. No. 254-1 and R. Doc. No. 255-2.
[100] *See* R. Doc. No. 140, at 5.
[101] *Id.*
[102] R. Doc. No. 265, at 11.
[103] *Id.*
[104] *Id.* at 12.

9696 Hayne Blvd. led to Green being charged with counts 4 and 5 of the superseding indictment, but that those counts were dismissed as a result of Green's plea agreement.[105] Green pleaded guilty only to counts 2 and 3 of the superseding indictment, pertaining to his guilty possession of a firearm on August 17, 2022, the day of the shoutout.[106] The government contends that "[r]egardless of the physical weapon, Green's possession of that machine gun on August 17, 2022, was captured on video," and, further, "Green was shown [during an interview] a screen shot[*sic*] from that video of him on that day with the machine gun and he admitted that it was him."[107] According to the government, Green therefore cannot show that he "would not have pleaded guilty to [c]ounts [2] and [3] even if the firearm that was the basis for the dismissed [c]ounts 4 and 5 was suppressed."[108]

As to Bazile, the government notes that he has no "expectation of privacy at a residence that is not his" and therefore had no standing to bring a motion to suppress the firearm recovered from Green's apartment.[109]

Claims of ineffective assistance of counsel based upon counsel's alleged failure to file a motion to suppress are governed by *Strickland's* two-prong test. *United States v. Dowling*, 458 F. App'x 396, 398 (5th Cir. 2012). To show counsel was deficient, the defendant "must at a minimum show that the evidence would have been suppressed if objected to." *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017) (internal quotations

---

[105] *Id.*; *see also* R. Doc. No. 217, at 20.
[106] R. Doc. No. 217, at 4–5, 20.
[107] R. Doc. No. 265, at 12–13.
[108] *Id.* at 13.
[109] R. Doc. No. 266, at 10.

omitted) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). "But even if the suppression motion would be non-frivolous, failing to object, when viewed in light of all the circumstances, may still constitute a reasonable trial strategy." *Id.* With respect to the second prong, prejudice requires a showing that the result would have been different "absent the excludable evidence." *Id.* (quoting *Kimmelman*, 477 U.S. at 375. Where a defendant pleads guilty, they must show that they "would not have pleaded guilty and would have insisted on going to trial." *United States v. Samaniego*, 532 F. App'x 531, 534 (5th Cir. 2013).

Because Bazile's guilty plea was not supported by the Polymer 80, 9mm firearm,[110] the Court finds its exclusion would have had no bearing on Bazile's guilty plea. He therefore cannot demonstrate the requisite prejudice, *see Evans,* 875 F.3d at 218, and the Court will focus the remainder of its analysis on Green.

Green has not presented any evidence or argument demonstrating that a motion to suppress the firearm would have been meritorious or that his counsel's failure to file a motion to suppress was deficient rather than the result of sound trial strategy.[111] Even if Green could demonstrate a meritorious Fourth Amendment claim

---

[110] *See* R. Doc. No. 113 (Bazile's factual basis excluding mention of the 9mm firearm); *see also* R. Doc. No. 215 (the Court noting at Bazile's rearraignment that "[a]s far as the Court is concerned . . . [t]he only thing I will hold you responsible for is the .32 caliber revolver, not the 9mm, notwithstanding what the factual basis states.").

[111] Green has not requested a hearing to develop these allegations. *See generally* R. Doc. Nos. 254, 255. Even if he had, such request would have been denied. Defendants are only entitled to an evidentiary hearing if they had "produce[d] independent indicia of the likely merit of [their] allegation[s]." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Green's speculative claims that a Fourth Amendment violation plagued the search and seizure of the firearm from 9696 Hayne Blvd., and that counsel was deficient for failing to move to suppress the same, are not sufficient

and counsel's deficiency, he has not shown that "absent the excluded" firearm he would not have pleaded guilty and insisted upon going to trial. *Id.*; *Samaniego*, 532 F. App'x at 534.

A successful motion to suppress would have excluded only the physical firearm itself, not the video, confession, or other evidence demonstrating Green's possession of the firearm on August 17, 2022. *Cf. United States v. Aldaco,* 201 F.3d 979, 984 (7th Cir. 2000) (finding that the absence of the physical firearm underlying the defendant's § 922(g)(1) charge did not necessitate dismissal of that count in light of the other evidence of the defendant's guilty possession, including officer testimony and the defendant's admission at the time of his arrest regarding his possession of a firearm).

Furthermore, to the extent that Green is attempting to argue that his counsel should have investigated and discovered that the Polymer 80, 9mm recovered from 9696 Hayne Blvd. did not belong to him, but instead belonged to someone else who "stayed there," that fact, even if true, would not suggest the requisite prejudice. Section 922(g)(1) "prohibits a felon . . . from knowingly possessing a firearm, either actually or constructively." *United States v. Smith*, 997 F.3d 215, 219 (5th Cir. 2021) (internal alterations and quotations omitted). "A defendant has actual possession over a firearm when he has 'direct physical control'—such as when he has the firearm

---

to warrant an evidentiary hearing. *See United States v. Edwards*, 442 F.3d 258, 267 n.7 (5th Cir. 2006) (citing *Cervantes*, 132 F.3d at 1110 and *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) ("[C]onclusory assertions do not support the request for an evidentiary hearing.")).

'on his person,' is seen 'carrying the firearm,' or is tied to the firearm with 'forensic evidence.'" *Id.* (quoting *United States v. Hagman*, 740 F.3d 1044, 1048, 1049 & n.2 (5th Cir. 2014)). "Ownership of the firearm is not requisite to proving possession." *United States v. Jones*, 133 F.3d 358, 362 (5th Cir. 1998); *United States v. Mendez*, 885 F.3d 899, 914 (5th Cir. 2018) ("The Government is not required to prove ownership to sustain a conviction [under § 922(g)(1)].").

Green's factual basis states that he "armed himself" with and "discharged" a firearm.[112] Green's control over the firearm was far more than "merely touching" it. *See Smith*, 997 F.3d at 224 ("[M]erely touching an item is not enough to possess it . . . ."). Video evidence also confirmed that Green possessed and fired the firearm. Green has not met his burden of demonstrating "a reasonable probability" that investigation and proof of another's ownership of the gun would lead to a different result. *Coleman*, 963 F.3d at 434.

### 4. *Waiver of presence at appellate oral argument*

Defendants' fourth argument seems to assert that appellate counsel was deficient when she "waived defendants['] presence for oral arguments before the panel of Judges."[113] Defendants make no additional argument in support of this fourth ground for vacatur. It appears that the Fifth Circuit heard oral argument only with respect to Green's appeal.[114]

---

[112] R. Doc. No. 140, at 4.

[113] R. Doc. No. 254-1, at 3; R. Doc. No. 255-2, at 3.

[114] *See USA v. Rayshaud Green*, No. 24-30613, R. Doc. No. 85; *see generally USA v. Alphonse Bazile*, No. 24-30606.

The government is correct that a criminal defendant has no "right to be present at oral arguments."[115] The U.S. Supreme Court has stated that "a lay appellant's rights to participate in appellate proceedings have long been limited by the well-established conclusions that he has no right to be present during appellate proceedings, or to present oral argument." *Martinez v. Ct. of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 163 (2000) (internal citations omitted)). Accordingly, the Court finds that appellate counsel's waiver of defendants' presence was not unreasonable or deficient.

In addition, the Court agrees with the government[116] that defendants have not shown that their presence at oral argument would have changed the Fifth Circuit's rulings on appeal and, therefore, they have not demonstrated prejudice.

### 5. *Bazile's competency*

The only grounds alleged in Bazile's amended § 2255 relate to his counsel's alleged failures to ensure that he was competent. He alleges that his counsel "failed to ensure [that he] had a rational understanding of the proceedings taken[*sic*] place against him" and "failed him by not informing the Court of a need to order a competency hearing to relate the facts of [his] diminished memory capacity."[117] Bazile posits that the record "clearly establishes" that he had a "diminished memory" and was "likely suffering from dementia."[118]

---

[115] R. Doc. No. 265, at 13.

[116] *See id.*

[117] R. Doc. No. 262-1, at 1–2.

[118] *Id.*

His motion also seems to suggest that counsel did not inform him that pleading guilty to possession of a firearm could result in the cross-reference to homicide and "a possible sentence of 15 years."[119] He also reports not understanding how the proceedings against him occurred given that "he was never arrested for a weapon or ammunition in his possession."[120]

In response, the government argues that there was ample evidence before the Court that Bazile was competent,[121] such as: information in the PSR that Bazile had no history of mental or emotional problems and that he was not taking any medication;[122] the fact that Bazile told this Court at a determination of counsel hearing held on April 3, 2024, that he did not have dementia;[123] and Bazile's

---

[119] *Id.* at 6 ("Mr. Bazile was under the impression that he was pleading guilty to felon in possession of a firearm, not a weapon use[d] in a murder."). In light of the fact that this Court advised Bazile at his rearraignment that "the maximum possible sentence that could be imposed on" him included "a term of imprisonment of up to 15 years," *see* R. Doc. No. 215, at 34, the Court finds this claim meritless.

[120] R. Doc. No. 262-1, at 3, 4. The Court also finds this contention meritless. Bazile raised this same question at his rearraignment hearing, *see* R. Doc. No. 215, at 5, at which time he also admitted to this Court that he was not refuting that he had possessed the .32 caliber revolver, *see id.* The Court informed Bazile at that hearing that his possession of the .32 caliber revolver (which is "the government's proof and [Bazile] admit[s] to it") was "enough to get [him] convicted" when combined with the fact that Bazile "knew [he] had been convicted of a felony." *Id.* at 7. Bazile confirmed that he understood. *Id.*; *see also id.* at 8 (Bazile: "Yes, it's clear enough."). The Court also further detailed the elements of the § 922(g)(1) offense Bazile was pleading guilty to later on during the rearraignment hearing, and Bazile confirmed that he understood the charge and essential elements of the offense establishing his guilt. *See id.* at 31–33.

[121] R. Doc. No. 266, at 12–13.

[122] *Id.* at 13 (citing R. Doc. No. 154 ¶ 75); *see also* R. Doc. No. 154 ¶ 75 ("The defendant reported no history of mental health or emotional problems. Further, the defendant is not taking any medication for mental health or emotional concerns.").

[123] R. Doc. No. 266, at 13.

31

responsiveness during hearings to this Court's questions.[124] The government also retorts that Bazile was given many opportunities during his rearraignment to ask questions and discuss his communications with counsel, and that Bazile agreed at that hearing to go forward with his plea and proceed with his appointed counsel.[125]

"The test of incompetency is whether a defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). A finding that the defendant was incompetent in fact at the time he entered his guilty plea would satisfy the prejudice prong of *Strikland*, because if the defendant "was incompetent, his plea was ineffective and he was prejudiced by its entry." *Id.* at 595.

However, in the context of a claim that counsel was constitutionally ineffective for failing to investigate a defendant's competency, *Strickland* prejudice requires only that the defendant "demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome.'" *United States v. Israel*, 838 F. App'x 856, 862 (5th Cir. 2020) (quoting *id.* (quoting *Strickland*, 466 U.S. at 694)). "'This is a lower burden of proof than the preponderance standard' required for incompetence in fact." *Id.* at 863 (quoting *Bouchillon*, 907 F.2d at 595). "Thus, even if [the defendant] were to fail to prove his incompetency by a preponderance of the

---

[124] *Id.*

[125] *Id.* at 12.

evidence, it is still possible that he raised sufficient doubt on that issue to satisfy the prejudice prong of his ineffective assistance of counsel claim." *Id.* (quoting *Bouchillon*, 907 F.2d at 595).

"Accordingly, to establish prejudice" with respect to a claim that counsel failed to investigate the defendant's competency, "there must be a reasonable probability that, but for trial counsel's performance, [the defendant] would have been found to lack the capacity to understand the nature and object of the proceedings against him, to consult with counsel, or to assist in preparing his defense." *Id.* To establish prejudice on a claim that counsel failed to "move for a competency hearing," the defendant "must show a reasonable probability that the district court would have found [him] incompetent if trial counsel had moved for a competency examination or hearing." *Id.* at 866.

Regarding the first *Strickland* prong, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Bouchillon*, 907 F.2d at 596 (internal alterations omitted) (quoting *id.*). Furthermore, "counsel has a duty to investigate a defendant's mental health if 'he has reason to believe that the defendant suffers from mental health problems.'" *Saldano v. Davis*, 701 F. App'x 302, 315 (5th Cir. 2017) (citing *Bouchillon*, 907 F.2d at 595–97). The Fifth Circuit has noted that it "must be a very rare circumstance indeed where a decision not to investigate would

33

be 'reasonable' after counsel has notice of the client's history of mental problems." *Bouchillon*, 907 F.2d at 597; *see also id.* ("Where a condition may not be visible to a layman, counsel cannot depend on his or her own evaluation of someone's sanity *once he has reason to believe an investigation is warranted* because, where such a condition exists, the defendant's attorney is the sole hope that it will be brought to the attention of the court." (emphasis in original)).

In *United States v. Israel*, the Fifth Circuit found that the defendant could not establish prejudice with respect to his allegations that his counsel failed to investigate his competency or move for a competency hearing. 838 F. App'x at 871–72. The defendant in *Israel* was a "diagnosed schizophrenic with a history of mental health issues." *Id.* at 857. He took medication for his schizophrenia, however, "the medication [was] not always effective," and, "[a]s a result, Israel occasionally ha[d] psychotic episodes during which he hallucinates both visually and audibly." *Id.*

Israel had robbed a bank at gun point and then fled the bank in his vehicle. *Id.* at 857–58. Israel reported to the police following his arrest that he had "an alter ego named Damon who was violent and had attempted to kill [him] in the past." *Id.* at 858. According to Israel, "the robbery was supposed to be a 'suicide by cop' that didn't work," and he "wanted to go to jail" to escape Damon. *See id.* Israel "pleaded guilty with no plea agreement." *Id.*

The Fifth Circuit found that Israel had "not shown that there [wa]s a reasonable probability that he lacked the capacity to understand the nature and object of the proceedings against him." *Id.* at 864.

34

First, the Fifth Circuit highlighted that at Israel's rearraignment hearing, Israel had "assured the district court that he was of sound mind and understood the charges against him, his rights, his plea of guilty, and all of the penalties and punishments that could come with that plea." *Id.* The Fifth Circuit also found notable that Israel had asked the district court clarifying questions regarding his possible maximum sentence, characterizing this questioning as "[e]xplicitly evincing [Israel's] understanding" of the proceedings. *Id.* The Fifth Circuit also highlighted that the district court had "engaged Israel in a colloquy" prior to accepting his guilty plea. *Id.* This colloquy involved asking Israel about his:

> mental health, current medications, and the "stress" he reported experiencing; his understanding of the charges against him and the proceeding that day; his understanding of the factual resume; his wish to plead guilty; the role of the sentencing court and the Guidelines; and the possibility of a sentence including a term of imprisonment of up to 20 years, a $250,000 fine, and a three-year term of supervised release.

*Id.* at 358. The district court found at that hearing that Israel was "'fully competent and capable of entering an informed plea, and that his plea of guilty . . . is a knowing and voluntary plea' not 'result[ing] from force, threats, or promises.'" *Id.*

As further evidence of Israel's "capacity to understand and overall competency," the Fifth Circuit cited letters sent by Israel to the Court in which he demonstrated his understanding that he "came to the court to plead guilty to bank robbery" and that "the district court would ultimately impose his sentence." *Id.* at 865. The Fifth Circuit additionally mentioned that "Israel's request to the court for 'leniency' at sentencing shows his capacity to understand the nature (sentencing) and object (Israel) of that proceeding." *Id.*

With respect to Israel's "capacity to consult with counsel and to assist in preparing his defense," the Fifth Circuit highlighted that at his rearraignment, Israel "swore that he had discussed his factual resume with trial counsel and that counsel explained the legal meaning of everything in it." *Id.* It also noted that Israel had "agreed that he had been satisfied with trial counsel and did not have any complaint with anything trial counsel had done or failed to do while representing him." *Id.* The Fifth Circuit also found notable the fact that Israel and counsel had consulted during a "twenty-five-minute court-ordered meeting, at the outcome of which the two 'resolved the differences between them,'" and "Israel never again raised any issue regarding his competence at any time or any dissatisfaction with counsel after that consultation." *Id.* Finally, the Fifth Circuit highlighted the numerous instances in which Israel had communicated aspects of his defense directly to the district court, either via letters or at hearings. *Id.* at 865–66 (stating that Israel's letter regarding his confinement conditions "evinces his capacity to assist his defense by contacting the district court").

Israel presented no contrary evidence demonstrating "that at the time he pleaded guilty or when he was sentenced [that] he was unable to understand the nature or object of the proceedings, consult with counsel, or assist in preparing his defense." *Id.* at 866. The Fifth Circuit concluded that Israel had not met his burden of demonstrating a reasonable probability that counsel's failure to investigate his competency prejudiced his defense. *Id.* at 866. For these same reasons, it also found that Israel could not sustain his burden with respect to his claim of ineffective

36

assistance of counsel based on his counsel's failure to move for a competency hearing. *Id.* at 866–87 ("There is no evidence that, had there been a competency examination or hearing, any testimony would have been elicited or other evidence would have been offered that Israel was incompetent at the time he pleaded guilty."). It did not reach the issue of whether his counsel's performance was deficient. *Id.* at 871–72 ("[E]ven if Israel could show that trial counsel's performance was deficient, Israel has not presented any evidence that the allegedly deficient performance prejudiced Israel's defense."). It also concluded that the district court did not err in ruling on the ineffective assistance of counsel claims without an evidentiary hearing. *Id.* at 861.

*Israel* is instructive for this Court's evaluation of Bazile's claims that his counsel was constitutionally deficient for failing to investigate his competency and failing to move for a competency hearing. Like in *Israel*, evidence in the record does not suggest that Bazile was incompetent at the time he pleaded guilty or when he was sentenced.

As with Israel, Bazile assured this Court at his rearraignment hearing that he understood what he was charged with and the elements of the offense.[126] Indeed, the proceeding began with this Court addressing a letter Bazile had written to the Court in which he indicated that he had some confusion regarding the fact that count 1 of the superseding indictment charged him with possession of both the .32 caliber revolver and the Polymer 80, 9mm firearm, the latter of which had only been

---

[126] R. Doc. No. 215, at 34, 60.

physically possessed by Green.[127] But after this Court explained to Bazile that his possession of the .32 caliber revolver, which he admitted to possessing, was sufficient to sustain his guilty plea to a violation of § 922(g)(1), Bazile confirmed, multiple times, that he understood.[128] To be sure, this Court did not proceed until Bazile reiterated his satisfaction with the explanation of the charge against him and his desire to proceed with rearraignment.[129]

This Court also made clear to Bazile that he was only holding Bazile responsible for the .32 caliber revolver[130] and that there was no "pressure" for him to plead guilty.[131] The Court also informed him that it would not proceed unless Bazile "underst[ood] what [he was] dealing with over here and what [he was] charged with and . . . not charged with."[132] Bazile confirmed that he wanted to "go forward" with his plea.[133] When asked by this Court whether he needed more time to speak through his concerns and understanding, Bazile confirmed that the Court had adequately "explained it to [him]."[134] Read in context, Bazile's brief confusion signals his unfamiliarity with criminal law and charging documents, rather than an "inability to understand the proceedings or charges against him." *Israel*, 838 F. App'x at 864; *see*

---

[127] *Id.* at 4–5.
[128] *Id.* at 6–10.
[129] *See id.*
[130] *Id.* at 58.
[131] *Id.* at 9.
[132] *Id.*
[133] *Id.* at 10.
[134] *Id.*

*also Bouchillon*, 907 F.2d at 593 ("Not all people who have a mental problem are rendered by it legally incompetent.").

Bazile also specifically told the Court at his rearraignment hearing that he had no mental health issues.[135] Like the district court in *Israel*, this Court, after asking questions of Bazile, his counsel, and counsel for the government, made a finding that Bazile was competent to proceed with rearraignment.[136] Also, similar to *Israel*, Bazile confirmed at his rearraignment hearing his understanding that, as a result of his guilty plea, he could be sentenced to a term of imprisonment of up to 15 years, a fine of not more than $250,000, and a term of supervised release of up to 3 years.[137] Additionally, Bazile confirmed that he understood: the role of the Court and U.S. Sentencing Guidelines;[138] the rights he was waiving and giving up by pleading guilty;[139] the plea agreement;[140] and his factual basis.[141]

In fact, Bazile pointed out that his factual basis still included a sentence that he "possessed" the Polymer 80, 9mm firearm in addition to the .32 caliber revolver.[142] The Court noted that it was "a good catch" by Bazile and ordered that that part of the

---

[135] *Id.* at 28.
[136] *Id.* at 29.
[137] *Id.* at 35, 40.
[138] *Id.* at 35–36.
[139] *Id.* at 36–38.
[140] *Id.* at 39–43, 49.
[141] *Id.* at 56–60.
[142] *Id.* at 56, 57; *see also supra* n.77.

factual basis be "cross[ed] out."[143] Bazile confirmed his satisfaction with the change both orally to the Court and via his signature to the crossed-out portion.[144]

Bazile confirmed at his rearraignment that he was pleading guilty "voluntarily and of [his] own free will[.]"[145] Like the district court in *Israel*, this Court concluded that Bazile's plea was "knowledgeable" and "voluntary."[146]

Bazile also spoke at his sentencing hearing.[147] He told the Court that he had discharged a weapon because he was trying to "protect [his] family" and highlighted that he had "remorse about what happened."[148] He also reminded the Court that the juveniles had initiated the altercation and that he had "kept asking them to leave," prior to arming himself and shooting.[149] Bazile highlighting mitigating evidence suggests that he understood the nature of his sentencing proceeding. *Cf. Israel*, 838 F. App'x at 865.

Just like the Fifth Circuit found in *Israel*, none of this evidence suggests that Bazile lacked capacity to understand the proceedings or charges against him or to assist in his defense. *Cf. id.* at 863–65.

With respect to his capacity to consult with counsel and assist in preparing his defense, the Court again highlights Bazile's successful challenge to the misstatement

---

[143] R. Doc. No. 215, at 58–59.
[144] *Id.* at 59.
[145] *Id.* at 60.
[146] *Id.* at 61.
[147] *See* R. Doc. No. 216, at 58–59.
[148] *Id.* at 58.
[149] *Id.* at 59.

in the factual basis, which resulted in it being crossed out.[150] Bazile also filed a letter prior to his sentencing in which he lodged "supplemental objections" to his PSR,[151] arguing that the cross-reference to homicide should not be applied "[i]n light of the strong evidence demonstrating defense of self and others (especially young grandchildren clearly visible in the images provided law enforcement)."[152] He also therein objected to a paragraph of the PSR for being "not an accurate statement of fact and unduly prejudicial."[153] Notably, Bazile did not raise any objections regarding his mental health or competency.[154] At sentencing, Bazile was able to recall and explain to the Court what had happened with respect to a life sentence, later suspended, that he had received following a distribution of heroin conviction from nearly fifty years prior.[155] The record supports Bazile's ability to consult with counsel "with a reasonable degree of rational understanding." *Cf. Israel*, 838 F. App'x at 865.

Prior to entering his plea of guilty, Bazile also confirmed that he wanted to proceed with his appointed counsel.[156] The Court specifically asked Bazile whether he had "sufficient time to discuss" the facts of his case and possible defenses with his attorney and whether Bazile was "entirely satisfied now with the advice and services

---

[150] R. Doc. No. 215, at 58–59.
[151] *See* R. Doc. No. 174.
[152] *Id.* at 2–3.
[153] *Id.* at 3.
[154] *See generally id.*; *see also* R. Doc. No. 154 ¶ 75 (discussing Bazile's "Mental and Emotional Health").
[155] R. Doc. No. 216, at 57.
[156] R. Doc. No. 215, at 8–15, 26.

of [his] counsel," to which Bazile replied, "yes."[157] Bazile also explicitly told the Court at that time that his counsel did not "fail to investigate or follow-up on anything that [he] requested that she investigate or follow-up on."[158] *Cf. id.* (noting favorably that Israel and counsel had indicated that they had resolved their differences and that "Israel never again raised any issue regarding his competence at any time or any dissatisfaction with counsel after that consultation").

Seemingly unlike the defendant in *Israel*, Bazile made multiple requests to withdraw his appointed counsel following his rearraignment. However, the Court denied those requests because it found that any issues with communication between Bazile and his counsel were a result of Bazile's own obstinance.[159] Indeed, at the April 3rd determination of counsel hearing, held after rearraignment and prior to sentencing, this Court noted to Bazile's counsel: "I happen to believe that he can assist you if he wants to assist you."[160] The Court also stated at that hearing that it found Bazile's assertions of his counsel's shortcomings "not credible" and that it believed Bazile was "trying to game the system."[161]

At sentencing, the Court addressed another letter from Bazile regarding his desire to withdraw his counsel. The Court again noted that Bazile was an unreliable narrator of his counsel's performance; a number of accusations in Bazile's letter were

---

[157] *Id.* at 39; *see also id.* at 46 (confirming that he was "satisfied with the advice" of counsel pertaining to the waivers of his rights).
[158] *Id.* at 53.
[159] *See, e.g.*, R. Doc. No. 216, at 15.
[160] R. Doc. No. 231, at 7.
[161] *Id.* at 10.

factually incorrect and "baldly contradicted by the record."[162] Bazile's counsel reported at sentencing that she and Bazile had been "communicating fine" prior to sentencing.[163] In sum, Bazile's "parade of counsel" demonstrates his intransigence rather than a lack of capacity to assist counsel.[164]

The only evidence Bazile presents to support that he was incompetent consists of: transcript excerpts from his determination of counsel hearing;[165] and a portion of the docket from his Orleans Parish Criminal District Court case.[166]

The transcript excerpts from his determination of counsel hearing include a portion of Bazile's statements "explaining . . . [his] concerns" regarding his counsel to the Court.[167] The relevant excerpt is as follows:

> THE COURT: What do you have to say, Mr. Basile, because obviously you were not telling me the truth when it came to your meetings with counsel? And the fact that she has, in fact, represented

---

[162] R. Doc. No. 216, at 15.

[163] *Id.* at 8.

[164] *Id.* at 15.

[165] R. Doc. No. 262-1, at 7–8, 10.

[166] *Id.* at 11–12. Bazile also attaches excerpts from his rearraignment hearing, but his annotations seem irrelevant to his ineffective assistance of counsel claims. *See id.* at 9. He selects the beginning portion of his rearraignment where he, the Court, and counsel were discussing his confusion regarding the charges in the superseding indictment; he annotated in the margins that his counsel was lying when she claimed that she had already explained the factual basis to him. *Id.* He also emphasized in the margins that his counsel stated that she "encouraged [him] to plea[d]" guilty because she believed it "was his best avenue to . . . come forward and take responsibility[.]" *Id.* This Court has already discussed *supra* that Bazile confirmed, multiple times, that his confusion was cleared up by the Court before he pleaded guilty and that he confirmed to this Court that his plea was not a result of coercion by anyone. Furthermore, it is unclear how counsel's alleged failure to review the factual basis to Bazile's satisfaction or her professional recommendation that Bazile plead guilty support Bazile's assertion that he lacked capacity to understand the proceedings.

[167] *Id.* at 8.

43

you – she has, in fact, met with you by way of Zoom or otherwise and you chose to lie to me indicating she has not done that.

THE DEFENDANT: It's no lie.

THE COURT: Well, did she not have Zoom conferences with you?

THE DEFENDANT: It's no lie. She had a Zoom conference with me asking me do I have dementia? Do I look like I have dementia?

THE COURT: I'm not a doctor.

THE DEFENDANT: She's not a doctor either and I wrote her and I told her I, I say, "I don't have dementia."[168]

This evidence seems to undermine rather than support Bazile's claim that there was a reasonable probability that he was incompetent.[169]

---

[168] *Id.*

[169] The other excerpts Bazile includes from his determination of counsel hearing do nothing to carry his burden of establishing prejudice. First, Bazile includes a portion of the hearing where his counsel notifies the Court that Bazile might want to pursue a withdrawal of his guilty plea; Bazile seems to highlight the fact that despite this acknowledgement, no motion was filed on his behalf. *See id.* at 7. This Court explained that it would not rule on any hypothetical motion to withdraw guilty plea when a motion was not formally before the Court. *See id.* ("[T]here's no motion in front of me withdrawing. And things that he complains about were all covered very carefully in the rearraignment we had."). Regardless, it is unclear how this demonstrates he was legally incompetent. In fact, it seems to suggest an understanding of the proceedings against him and an ability to assist in his defense. *Cf. Israel,* 838 F. App'x at 865 (citing Israel's post-rearrraignment letters to the Court discussing his "concerns with trial counsel" as evidence of his understanding and competency). Second, Bazile includes the portion of his determination of counsel hearing where this Court denied the motion to withdraw counsel. *See id.* at 10. Bazile notes in the margins that the Court "[d]id not let counsel to[sic] withdraw from the case, [and] counsel still did not communicate with the defendant (Mr. Basile)." *Id.* The Court explained its reasons for denying the motion to withdraw therein. *See generally* R. Doc. No. 231. The Court's ruling does not demonstrate the requisite prejudice for Bazile's ineffective assistance of counsel claims.

The state criminal docket sheet merely reveals that Bazile did not appear for a number of mental competency hearings and that his counsel filed a motion to withdraw the "order for sanity commission to evaluate defendant for competency to stand trial."[170] The motion to withdraw was granted.[171] The fact that the evaluation never occurred does not demonstrate that, had the evaluation occurred, he would have been found incompetent. *Cf.* at 866 (finding that Israel had not met his burden of establishing prejudice in part because he had "not presented any evidence that trial counsel could have obtained evidence from a health care expert that Israel was incompetent when he pleaded guilty").

Bazile has not demonstrated a "reasonable probability that he was incompetent" at the time he pleaded guilty or at his sentencing hearing. *Id.* Likewise, the evidence does not suggest that "had there been a competency examination or hearing," that Bazile would have been found incompetent. *Cf. id.* at 867. Accordingly, Bazile fails to demonstrate the requisite prejudice and the Court need not reach the question of whether his counsel's performance was deficient. *See id.* at 871–72. Similarly, because Bazile has not presented "independent indicia of the likely merit of his allegations," *Cervantes*, 132 F.3d at 1110, and because "the motion and the files and records of the case conclusively show that [Bazile] is entitled to no relief," § 2255(b), the Court need not conduct an evidentiary hearing. *Cf. id.* at 861.

---

[170] R. Doc. No. 262-1, at 11–12.

[171] *Id.* at 12.

The Court further notes that Bazile did not raise the issue of his competency until after this Court sentenced him to 15 years imprisonment, the statutory maximum.[172] His representation that he was not informed that he could "face" such a sentence, is refuted by the record.[173] Bazile cannot avoid the consequences of his guilty plea with unsupported *post hoc* representations of incompetency. *See id.* at 862 ("In assessing . . . a prejudice claim, courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." (internal citations and alterations omitted)).

## IV.    CONCLUSION

**IT IS ORDERED** that Green's motion[174] to vacate pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Bazile's motion[175] and amended motion[176] to vacate pursuant to 28 U.S.C. § 2255 are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, May 28, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[172] *See generally USA v. Alphonse Bazile*, No. 24-30606, R. Doc. No. 47.
[173] *See, e.g.,* R. Doc. No. 215, at 34.
[174] R. Doc. No. 255.
[175] R. Doc. No. 254.
[176] R. Doc. No. 262.